IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LYDIA JUAREZ § | |
| § | |
| V. § | A-11-CV-1015-LY |
| § | |
| BRENHAM INDEPENDENT SCHOOL § | |
| DISTRICT § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

  Before the Court are: Plaintiff's Amended Complaint (Clerk's Document No. 12); Defendant's First Amended Motion to Dismiss (Clerk's Document No. 14); Plaintiff's Response in Opposition to Defendant's Amended Motion to Dismiss (Clerk's Document No. 18); and Defendant's Reply to Plaintiff's Response to its First Amended Motion to Dismiss (Clerk's Document No. 19). The Magistrate Judge submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  FACTUAL BACKGROUND**

  Lydia Juarez ("Plaintiff"), a Hispanic female, began her employment with the Brenham Independent School District ("Defendant" or "Brenham ISD") as a bilingual kindergarten teacher in 2005. Amended Complaint at 4. During the 2010-2011 school year, Plaintiff alleges that her immediate superior, Principal Kim Rocka, became increasingly critical of Plaintiff. *Id.* at 6. Plaintiff alleges that this heightened scrutiny occurred after a private conversation held between Ms. Rocka

and the former wife of Plaintiff's then boyfriend. *Id.* Following this conversation, Plaintiff claims, Ms. Rocka began to act in a racially discriminatory manner toward Plaintiff so as to undermine Plaintiff's ability to perform her duties. *Id.*

In response to Ms. Rocka's conduct, Plaintiff filed an internal complaint with her superiors in the Brenham ISD. *Id.* at 13. Plaintiff alleges that Brenham ISD did not take any remedial action in response to the complaint. *Id.* at 15. Plaintiff asserts that after her complaint to Brenham ISD, other Brenham ISD employees began to harass her through "overly picky criticism and disparagement of the manner in which Plaintiff was and had always performed more than satisfactorily." *Id.* at 11. Plaintiff requested that she be laterally transferred to another elementary school within the district. *Id.* at 5. On June 7, 2011, Plaintiff was transferred from her position as a Bilingual Kindergarten Teacher to a Head Start program in another school within Brenham ISD. Plaintiff alleges this transfer constitutes a demotion. *Id.* at 4. Following Plaintiff's reassignment to the Head Start program, Plaintiff's former position as a Bilingual Kindergarten Teacher was filled by a newly-hired Caucasian woman, whom Plaintiff argues was less experienced and less qualified for the position. *Id.* at 7-8.

Plaintiff contends that she was demoted to a lesser position because of her race and national origin, and in retaliation for lodging internal complaints about her supervisor, Ms. Rocka. *Id.* at 3. Plaintiff also believes that, prior to her demotion, Ms. Rocka and other senior employees of the Brenham ISD intentionally created a hostile work environment for the purpose of forcing Plaintiff to resign from her position of Bilingual Kindergarten Teacher. *Id.* Plaintiff argues that this hostile work environment was the result of a conspiracy amongst District officials who, acting with full ratification of the Brenham ISD, engaged in a policy of forcing racial minorities out of the district.

*Id.* at 16-18. Plaintiff asserts that there was a persistent and widespread policy amongst District officials allowing Principals, such as Ms. Rocka, to force minority teachers out of the district through hostile treatment and demotions. *Id.* at 6. Plaintiff further contends that the district Superintendent, Mr. Sam Bell, had actual knowledge of such policies and practices and had at least constructive knowledge of Ms. Rocka's hostile treatment of Plaintiff. *Id.* at 6-7.

On July 18, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of discrimination on the bases of race and national origin, as well as retaliation. On July 29, 2011, the EEOC issued Plaintiff a Dismissal and Notice of Rights, notifying Plaintiff of her right to sue. On November 28, 2011, Plaintiff filed this lawsuit against the Brenham ISD, alleging discrimination on the bases of race and national origin, retaliation, and hostile work environment in violation of 42 U.S.C. §2000e et seq. ("Title VII") and the Texas Labor Code §21.051 ("TCHRA"). Plaintiff also seeks relief for unlawful discriminatory employment practices on the bases of age and race under 42 U.S.C. §§ 1983 and 1985.

## II. ANALYSIS

### A.   Motion to Dismiss Standard

Defendants move to dismiss based upon Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. A motion under Rule 12(b)(1) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.2008) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). The Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed

3

facts plus the court's resolution of disputed facts." *Lane*, 529 F.3d at 557 (*quoting Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in the light most favorable to Plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (*quoting Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In 2009, the Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

A.     **Plaintiff's Title VII and TCHRA Claims**

   1.     **Plaintiff's Race and National Origin Discrimination Claim**

Plaintiff asserts that she was demoted from the position of Bilingual Kindergarten Teacher to Head Start Teacher because of her race, Hispanic, and national origin, Mexican.  Title VII provides, in relevant part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . ." 42 USC § 2000e–2(a).  Similarly, the TCHRA prohibits discrimination by an employer against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, disability, religion, sex, national origin, or age.  TEX. LAB. CODE ANN. §21.051.

To establish a prima facie case of discrimination under Title VII or the TCHRA, a plaintiff may prove her claim either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In this case, in order to show discriminatory treatment, Plaintiff must first present a prima facie case of discrimination by a preponderance of the evidence to establish that she: (1) is a member of a protected class, (2) was qualified for her position, (3) suffered an adverse employment action, and (4) was replaced by someone outside of the protected class or was treated less favorably than other similarly situated employees outside the protected group.  *Id.*

The parties dispute whether Plaintiff suffered an "adverse employment action" when she was transferred to the position of Head Start Teacher.  They do not dispute the other elements of Plaintiffs' prima facie case. In the context of establishing a prima facie case, an adverse employment

action means an "ultimate employment decision," such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Title VII does not cover "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (*quoting Burger v. Central Apartment Mgmt.*, 168 F.3d 875, 878 (5th Cir. 1999)). An employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th. Cir. 2004). Moreover, it is a major change in compensation, duties, and responsibilities that would constitute an ultimate employment action. *Pegram*, 361 F.3d at 282 n. 8 (*citing Hunt v. Rapides Health Care Sys., LLC*, 277 F.3d 757, 770 (5th Cir. 2001)). A purely lateral transfer cannot constitute an adverse employment action. *Burger Cent. Apt. Mgmt., Inc.*, 168 F.3d at 879.

Plaintiff asserts that she was demoted when she was transferred from the position of Bilingual Kindergarten Teacher to Head Start Teacher. For the purposes of a Title VII discrimination claim, a demotion qualifies as an adverse employment action. *Pegram*, 361 F.3d at 282. An employment transfer may qualify as a demotion and, consequently, an adverse employment action, if the transfer makes the job objectively worse. *Id.* at 283. To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade. *Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007). Rather, a transfer may qualify as a demotion if the new position proves to be objectively less prestigious, less interesting, or provides less room for advancement. *Id.*

In support of her contention that her transfer to Head Start constituted a demotion, Plaintiff asserts that her responsibilities as a Head Start instructor were less than that of a Bilingual Kindergarten Teacher; that a Head Start instructor does not require the same level of certification

as a Bilingual Kindergarten Teacher; that the position of Head Start instructor requires a lower level of skill than the position of Bilingual Kindergarten Teacher; and that the position of Head Start Instructor is less prestigious than the position of Bilingual Kindergarten Teacher. Complaint at 5-6. A plaintiff's subjective perception that a demotion has occurred is not enough to constitute an actionable employment action, but rather "a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused [him] harm." *Alvarado*, 492 F.3d at 614 (*quoting Serna v. City of San Antonio*, 244 F. 3d 479, 483 (5th Cir. 2007)). Without additional evidence, "undesirable work assignments are not adverse employment actions." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997).

This is an inherently factual inquiry. As a result, a motion to dismiss is not the proper vehicle to address the issue of whether Plaintiff was demoted and suffered an adverse employment action when she was transferred. Plaintiff has met the minimum pleading requirements to withstand dismissal on this issue. *See Serna*, 244 F.3d at 485 (holding that the plaintiff's claim that his reassignment from one position to another was a less prestigious or desirable transfer, without more, would not lift him over the hurdle of summary judgment for the purpose of an adverse employment action).

  **2. Retaliation**

In addition to her race discrimination claims, Plaintiff has also asserted retaliation claims under Title VII and the TCHRA. Under Title VII, an employer is prohibited from discriminating against an employee because she has opposed any practice made an unlawful employment practice by Title VII or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. 2000e-3(a) (1994). To bring a

retaliation claim under Title VII, Plaintiff must establish a prima facie case of retaliation by alleging that (1) she participated in an activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 429 F.3d at 559. Under the retaliation provision of Title VII, adverse employment decisions are not limited to discriminatory actions that affect the terms and conditions of employment. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). An adverse employment action under the retaliation provision includes any action that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

In her Complaint, Plaintiff asserts that she was demoted from her position of Bilingual Kindergarten Teacher to a Head Start Program in another school within the district in retaliation for filing internal complaints about her supervisor, Ms. Rocka. Plaintiff alleges that she filed an internal complaint with her superiors at the Brenham ISD regarding Ms. Rocka's discriminatory treatment of her on the bases of her race and national origin, an activity that is protected by Title VII. Plaintiff also alleges that she suffered an adverse employment action in the form of a demotion. Lastly, Plaintiff has alleged that the demotion to the Head Start Program were the direct result of the complaint she filed with her superiors regarding Ms. Rocka's discriminatory conduct.

Defendant again contends that Plaintiff has failed to adequately allege an adverse employment action because her transfer to Head Start did not reach the "materially adverse" requirement. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (holding that a transfer from one department to another was not a materially adverse employer action). The Court finds once again that, because Plaintiff has met the pleading threshold, dismissal is inappropriate at this juncture. *See Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (finding

lateral transfer materially adverse where it impacted employee's flex-time schedule which was critical to care for her disabled child); *Kessler v. Westchester County Dept' of Social Servs.*, 461 F.3d 199, 209–10 (2d Cir. 2006) (finding that lateral transfer which did not impact job title, job grade, salary or benefits could be found materially adverse where employee alleged he was stripped of significant responsibilities); *cf. Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 71 (noting that reassignment of job duties is not automatically actionable; material adversity of a reassignment "depends upon the circumstances of a particular case").

### 3. Hostile Work Environment Claims

Plaintiff has also asserted hostile work environment claims under Title VII and the TCHRA, claiming that her superiors and coworkers intentionally harassed her because of her race and national origin. Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation, conditions, terms, or privileges of employment because of her race, color, religion, sex, or national origin. 42 U.S.C. 2000e-2(a)(1). This language is not limited solely to the economic or tangible forms of discrimination. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Protection under Title VII extends to intangible forms of discrimination as well, including subjecting an employee to a hostile work environment. *Id.*

In order to establish a prima facie case of hostile work environment based on race, Plaintiff must show that: (1) she is a member of a protected class based on her race, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her race, (4) the harassment affected a term, condition, or privilege of her employment, and (5) Brenham ISD knew or should have known of the harassment and failed to take remedial action. *Ramsey v. Henderson*, 286 F. 3d 264, 268 (5th Cir. 2002). To be actionable under Title VII, an employer's harassing conduct must be severe or

pervasive enough to create an objectively hostile or abusive work environment (an environment that a reasonable person would find hostile).  *Harris*, 510 U.S. at 21.  Where a plaintiff has failed to allege a sufficient factual basis to support any one element of her prima facie case of hostile work environment, dismissal of the claim is proper.  *See Grace v. Louisiana Housing Finance Agency*, 2012 WL 1252623 (M.D. La 2012) (dismissing plaintiff's hostile work environment claim because plaintiff's allegations that her employer yelled at her, sent malicious emails, and hung up on her did not rise to the level of severity necessary to sustain a claim for hostile work environment); *Kummerle v. EMJ Corp.*, 2012 WL2995065 (N.D. Tex. 2012) (dismissing plaintiff's hostile work environment claim because she failed to allege enough facts to support her assertion that the alleged sexual harassment was based on her sex); *Edwards v. Louisiana Community & Technical College System*, 2012 WL 1391662 (W.D. La. 2012) (dismissing plaintiff's hostile work environment claim because the alleged racially discriminatory statements were not severe enough to raise an inference that the harassment affected a term or condition of employment).

In her Complaint, Plaintiff has alleged that she is member of a protected class; she was subjected to severe, unwelcome harassment; the harassment was based on her race; the harassment affected a term or condition of her employment in that it prevented her from adequately performing her teaching duties; and that the Brenham ISD knew or should have known about the harassment and failed to take any remedial action.  Although Plaintiff has not added any additional facts from those relied upon on the other claims, once again, this is enough to put the claim before the Court.

B.     **42 U.S.C. §§1983 & 1985 Claims**

In addition to her various Title VII claims, Plaintiff has also asserted claims of unlawful discriminatory employment practices on the bases of age and race under 42 U.S.C. §§1983 and 1985.

Title 42 U.S.C. §1983 provides, in pertinent part, the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The purpose of 42 U.S.C. §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 112 S.Ct. 1827, 1830 (1992). To state a claim under §1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 65 (1998). Similarly, Title 42 U.S.C. §1985 provides a civil remedy to citizens who have been deprived of federally guaranteed rights by conspirators acting under "color of law." *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 371 (1979). Title 42 U.S.C. §1985(3) does not, however, create any substantive rights, it simply provides a remedy for the violation of the rights it designates. *Id.* at 372. To bring a claim of civil conspiracy under 42 U.S.C. §1985(3), Plaintiff must allege that the defendants (1) conspired (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. *Id.* The complaint must then assert that one or more of the conspirators (3) did any act in furtherance of the object of the conspiracy, causing another person (4) to be injured in his person or property, or to be deprived of having and exercising any right or privilege of a citizen of the United States. *Id.*

Plaintiff alleges in her Amended Complaint that her superiors in the Brenham ISD, acting

11

in their official capacity and following an official policy of the district, engaged in a civil conspiracy to force Plaintiff to resign from and ultimately demote her from her position of Bilingual Kindergarten Teacher because of her race. However, the Supreme Court has previously determined that the "deprivation of a right created by Title VII cannot be the basis for a cause of action under §1985(3). *Id.* at 378. Similarly, Fifth Circuit precedent establishes that "although Title VII supplements and overlaps §1983, it remains an exclusive remedy when a state or local employer violates only Title VII." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 549 (5th Cir. 1997). A plaintiff may pursue both §1983 and Title VII claims only when the employer's conduct violates both Title VII and a separate constitutional or statutory right. *Id.* When no independent statutory or constitutional violation arises from the set of facts or specific conduct that gives rise to a claim under Title VII, Title VII shall be the exclusive remedy. *Id.* Plaintiff explicitly states in her Amended Complaint that she is suing under §§ 1983 and 1985 to correct unlawful discriminatory employment practices on the bases of age and race. Amended Complaint at 3. As employment discrimination is protected by Title VII, and Plaintiff has alleged no other independent constitutional or statutory violation resulting from Defendant's conduct, Plaintiff can seek relief exclusively under Title VII. Therefore, it is recommended that Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 be dismissed.

C.     **Request that Plaintiff be Required to Re-Plead**

In the alternative to dismissal, Defendant has requested that the Court require Plaintiff to file a more definite statement in accordance with Rule 12(e). Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED.R.CIV.P. 12(e)

(2012). To comply with Rule 8, a plaintiff's statement of his claim "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Glen. Elec. Captial Corp. v. Posey*, 415 F.3d 391, 296 (5th Cir. 2005) (*quoting Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). The Fifth Circuit has held that Rule 12(e) should not be used to frustrate the policy of Rule 8 by "lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959). Though the pleadings are far from a model of how to draft a federal lawsuit, Plaintiff's claims are not so vague or ambiguous as to not allow Brenham ISD to respond.

### III. RECOMMENDATION

The undersigned RECOMMENDS that the District Court GRANT Defendant's Motion to Dismiss with regard to Plaintiff's claims under 42 U.S.C. §§1983 and 1985, and any age discrimination claims she might have brought. The Court further recommends that the District Court DENY Defendant's Motion to Dismiss Plaintiff's Title VII and TCHRA race and national origin discrimination claims, retaliation claims, and hostile environment claims, and DENY Defendant's Motion for More Definite Statement.

### IV. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report

shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-30 (5th Cir. 1996) (en banc). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 25th day of October, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE